(C. D. 422)

J. E. BERNARD & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 20, 1941)

*G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Charles D. Lawrence,* Acting Assistant Attorney General *(Richard H. Welsh* and *Joseph A. Howard, Jr.,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted upon a particular importation invoiced as "45 litho zinc plates with original work for reproduction of maps." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at only 25 per centum ad valorem under paragraph 341 of said act which reads as follows:

PAR. 341. Steel plates, stereotype plates, electrotype plates, halftone plates, photogravure plates, photo-engraved plates, and plates of other materials, engraved or otherwise prepared for printing, and plates of iron or steel engraved or fashioned for use in the production of designs, patterns, or impressions on glass in the process of manufacturing plate or other glass, 25 per centum ad valorem; lithographic plates of stone or other material engraved, drawn, or prepared, 25 per centum ad valorem.

Four samples of the imported plates were admitted in evidence as plaintiff's collective exhibit 1. In addition, the plaintiff offered in evidence the testimony of C. A. Burkhardt, president of A. J. Nystrom & Co., the real importer and ultimate consignee of the involved merchandise. He testified that the business of his company was to buy, sell, and manufacture maps, globes, and charts for the school trade; that he had been with the company for about 15 years; that said company prints maps and that he is familiar with the manner in which said work is done, since it is performed under his supervision. The witness then defined a lithographic plate as follows: "A lithographic plate is a metal plate, usually of zinc, the surface of which has been prepared chemically by means of photography, for printing." He then testified in part as follows:

By Mr. SCHWARTZ.

Q. Will you please state what the 45 litho zinc plates covered by this invoice were, and how they were used, for what purpose and in what manner?—A. These plates were imported from the W. and A. K. Johnston Company of Easter Road, Edinburgh, for the purpose of producing here in the United States series of school geographical maps. They are zinc plates prepared for the lithographic process of printing. The form in which these are received, the size of them, depends upon the capacity of the camera. They are in four sections. That is the map, as submitted in form, is in four sections.

\*        \*        \*        \*        \*        \*        \*

Q. Were they used to produce those maps?—A. They have not been used for that purpose so far.

Q. Is that because the map of the World is changing daily?—A. Yes; we are waiting until things settle down.

Q. You have used similar plates in making other maps?—A. Yes.

Q. And when these plates, covered by this importation, are used, if they are ever used, they will be used in the same way?—A. Yes.

Q. Tell us how they are used to make maps.—A. If we wish to use a small press, we can put these plates in that press and print from them, and then in our process of map mounting join them together, and make a single map of the United States.

\* \* \* However, practically we find it is more economical to use these small plates to produce one large one by a process that we call the transfer process. That is, we print from these plates to a special type of paper called transfer paper. Then we join those. In this case it would be four sheets of transfer paper, and put those sheets in contact with a hard sheet of zinc that is four times as large as this, and produce from those four plates a large plate. From that large plate, we can print the map in one place. That is more economical than to use four pieces.

Q. The 45 plates in this importation represented what part of the World, geographically?—A. The United States, the World, and the Continents, separately.

Q. And the four plates in evidence as Collective Exhibit 1 represent the United States; is that correct?—A. That is correct.

Q. Do you know why that was imported as four plates instead of one plate?—A. The camera is limited in size. That is, you can only make a negative of a certain size in the camera which limits the size of the plate. If the camera had been sufficiently large they would have sent these as one plate which would have been used as the final press plate.

Q. Are you familiar with the manner in which plates such as Collective Exhibit 1 are produced or prepared?—A. I am.

Q. Have you done that work yourself, or supervised such work?—A. I have seen it done.

    \*        \*        \*        \*        \*        \*        \*

Q. Were the plates which you saw prepared the same as those plates in Collective Exhibit 1?—A. They were; yes, sir.

Q. All right. Will you please state how they are prepared or produced?—A. The draftsman draws on drawing paper the map that is desired and this drawing is photographed in sections according to the size of the camera that is used. Then, depending upon whether glass negatives were used or films, either can be used, the negatives or films are developed as in ordinary photography. These sheets of zinc are sensitized a lot like photographic paper. The negative is placed in contact with the plates and the light shining through the negative affects the sensitized chemical on the plates. The plates are developed a good deal the same as photographic prints. They are rubbed with water and oily ink and the design you see there comes out. When the plates are put on the press they are treated by means of rollers with water and with oily ink. The plate is wet and when it comes in contact with the inky roller the oily ink on the roller sticks to the design you see on the plate and when it comes in contact with paper it is printed. This varies in no way from the regular printing plates we use.

On cross-examination the witness testified in part as follows:

X Q. Mr. Burkhardt, I will take just one plate from Collective Exhibit 1. Do you print directly from that plate?—A. We do not practically, no.

    \*        \*        \*        \*        \*        \*        \*

X Q. Is it prepared so you can print directly from this plate?—A. We can if we wish to.

X Q. Wouldn't it be printed backwards if you did that?—A. No. On the offset press it prints first on a rubber roller.

X Q. You transfer your design or section or map from that plate to another plate before it is printed, isn't that right?—A. If you wish to print it all in one piece.

On redirect examination the witness testified in part as follows:

R. Q. I show you one of the four plates in Collective Exhibit 1, which has printed on it or prepared on it in some way the map of the western part of the United States, ranging from Washington on the west to the western part of Minnesota on the east and California on the southwest to the southwestern part of Oklahoma on the west. If for some reason or another you wanted to print a map of that part of the United States, could it be done with this plate?—A. Yes.

    \*        \*        \*        \*        \*        \*        \*

# 49

R. Q. Will you please state how that would be done?—A. It is locked into an offset press and treated as an ordinary printing plate.

R. Q. Well, now is it printed directly from this plate?—A. The offset method of printing has the plate print first on a rubber blanket and then prints on the paper. If it were the direct method of lithographic printing, the design would be reversed.

R. Q. And that is the way offset printing is always done; is that correct?— A. That is correct.

Upon this record counsel for the Government in his brief filed herein contends that the plates in question are not "prepared for printing" within the meaning of paragraph 341 of the Tariff Act of 1930, and cites in support of such contention the case of *Jersey City Printing Co. et al.* v. *United States*, T. D. 46219, 63 Treas. Dec. 397. We have carefully read the decision in that case and regard it as having no application to the facts in this case. There, the merchandise consisted of certain chromium, steel, and copper plates to which certain processes had been applied after importation to render them prepared for printing. Here, no additional processes are required to be applied to the imported plates to make them ready for use in offset printing.

As pointed out by counsel for the plaintiff in their brief filed herein, the method described by plaintiff's witness is that which is characteristic of all offset printing.

In Supplemental Volume III, page 220, of Encyclopaedia Britannica, Thirteenth Edition, under the subject "Printing" occurs the following:

*Lithography.*—In lithographic printing, the stone from which impressions were formerly taken has almost completely disappeared. In its stead are zinc and aluminum sheets which, encircling the printing cylinder, permit the complete application of the rotary principle to lithographic production also. A further development is what is known as the "offset" process, in the operation of which the design to be printed is first transferred to a rubber blanket, from which it is again transferred to the paper. Whereas formerly only smooth-surfaced, specially prepared papers could be printed upon lithographically, by the offset method any paper, whether smooth- or rough-surfaced, may be used with equal facility. Offset seems to be particularly adapted to colour work.

Moreover, the definition given by the plaintiff's witness of a lithographic plate in conjunction with the description in his testimony of the method by which such plates are manufactured, conforms to the definition of lithography given in Webster's New International Dictionary, to wit:

Lithography, *n.* * * * 2. The art or process of putting writing or designs on stone with a greasy material, and of producing printed impressions therefrom; also, any process based on the same principle, using zinc, aluminum, or some other substance instead of stone. * * *

Upon the entire record we find as a fact that the plates constituting the imported merchandise at bar are both "plates of other materials, engraved or otherwise prepared for printing" and are also lithographic plates within the meaning of said paragraph 341, and as such are properly dutiable at the rate of 25 per centum ad valorem under said paragraph, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.