(C. D. 1724)

CHRISTO POULOS & CO., INC.
DANIEL F. YOUNG, INC. } v. UNITED STATES

United States Customs Court, Third Division

(Decided September 1, 1955)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *E. Thomas Honey* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: The case involves the proper classification and rate of duty upon an importation of what is described on the invoice as "Preserved Cargo Ginger in Brine f. a. q. of the season." The collector of customs assessed duty thereon at the rate of 8 per centum ad valorem under the provisions of paragraph 778 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the proclamation thereunder, T. D. 51909, as "Ginger root, candied, or otherwise prepared or preserved." Plaintiffs claim that the ginger root is free of duty under paragraph 1768 of the same act as "ginger root, not preserved or candied; * * *, if unground," which is enumerated under the descriptive wording of "Spices and spice seeds."

The ginger root has not been candied. It consists, according to the record, of the root of the ginger plant which has been peeled and partly dried, pierced with a bamboo fork in order that brine might penetrate, washed, and placed in a salt solution in barrels, in which condition it is shipped to this country.

Plaintiffs claim that, far from being prepared or preserved, this ginger root was in the crudest form possible for shipment and was the raw material from which plaintiffs manufactured a food. On that theory, they contend that Congress did not intend that the raw material, from which candied or crystallized ginger is manufactured, should pay the same rate of duty as the manufactured product.

It is contended on behalf of the Government that paragraph 1768, *supra*, is a spice paragraph and that this commodity cannot be considered a spice because it has not been shown to be a type of ginger used as a spice.

The pertinent provisions of the respective paragraphs of the act involving ginger root are set forth below.[1]

---

[1] PAR. 778. Ginger root, candied, or otherwise prepared or preserved, 20 per centum ad valorem. [Rate reduced to 8 per centum ad valorem by the General Agreement on Tariffs and Trade, T. D. 51802, and T. D. 51909.]

PAR. 781. Spices and spice seeds: * * * ginger root, not preserved or candied, ground, 5 cents per pound; * * *. [Rate reduced to 2 cents per pound by the General Agreement on Tariffs and Trade, T. D. 51802.]

PAR. 1768. Spices and spice seeds: (1) Cassia * * *; ginger root, not preserved or candied; * * *; all the foregoing, if unground. [Free list.]

The president of the importing corporation testified on behalf of the plaintiffs. His testimony may be summarized as follows: The imported ginger root is processed by the plaintiffs into candied and crystallized ginger for confectionery purposes. He has been importing ginger for 16 years and does not sell it in the condition in which it is imported. He described ginger root as the "root of a flower which is known as ginger, * * * and it comes in various types of forms. * * * It is like a palm, almost, with very uneven shoots." He has imported ginger from China, Hong Kong, some from Cuba, and quite a bit from Formosa. He described the ginger root of the invoice as cargo ginger in brine with which he was thoroughly familiar, having imported it for a number of years—sometimes two or three times a year—until some time in 1950, at which time they could no longer bring it in from Canton. He produced an illustrative sample of ginger root in brine which had been imported in November or December 1953, which he stated was representative of the imported merchandise. It has been peeled and is representative as to color but is smaller than ginger root from Hong Kong. His shippers have always been instructed by him to pack the ginger root in brine which contains about 16 per centum salt. Ginger imported by his corporation will remain in a usable condition about 3 months. By the addition of salt, it will keep perhaps a year or a year and a half. They could not use the ginger in its imported condition because it gives a burning sensation and it would be extremely salty.

This witness described the processes to which they put the ginger root in brine imported by them as follows: It is boiled for several hours—between 7 and 10—until tender, the water being changed about once every hour. Then it is put into a large tank, with luke-warm water shooting from the bottom upward, where it remains for about 24 hours so that the salt will be washed out. It is then removed and placed in other tanks where hot sugar sirup is applied to it and where it remains for about 3 weeks. Every other day the quantity of sugar is increased until the product is thoroughly cured, which requires about 2½ to 3 weeks. By that process, candied ginger is obtained, and that is sold to manufacturers of candies who dip it in chocolate. If crystallized ginger is desired, the root is cut into slices and rolled in sugar, then goes through another crystallization process, which takes another 24 hours, at the end of which time crystallized ginger is produced. The reason for importing the ginger in brine with the skin removed is that it is advisable to remove the skin, otherwise the brine may not be absorbed and will not penetrate through the pores of the fruit, in which case the fruit may deteriorate and would not be usable. He explained, in answer to questions, that the water in which the ginger root is soaked is disposed of and that the brine is thrown away. The witness produced and there were received in

evidence as plaintiffs' illustrative exhibit 2 a sample of crystallized ginger and also a sample of drained ginger (plaintiffs' illustrative exhibit 3).

On cross-examination, the witness stated that he imports both ginger in brine and fresh ginger. He described the latter as ginger without the brine with the skin on. The fresh ginger will deteriorate unless it is put in brine; therefore, it is immediately (we assume when received by his corporation) placed in brine in order to prevent decay. The purpose of using their own formula for brine is to ensure that the merchandise would reach this country in good condition and not "deteriorated." The effect of the brine is to harden the root. As to the fresh ginger root, that would remain in a usable condition, if not in brine, only about a week or 10 days. On being asked to interpret the letters "FAQ" in the description on the invoice, the witness stated that this was the first time he had seen those letters in that connection; usually it is described as "GAQ," which means general average quality. He orders it as general average quality, "GAQ." When he imports fresh ginger, it is placed in brine because his organization does not have the facilities for processing large quantities at one time. It would not be necessary to place it in brine if they had the facilities for processing it when received. The witness stated that he never sells any ginger in brine to other users in this country.

He also testified as to the practicability of importing fresh ginger from Cuba and Formosa and, in response to questions, stated that in pickling ginger root it is necessary to remove the greater portion of the salt before processing the ginger.

Defendant produced the testimony of one witness, a Chinese interpreter in the office of the customs examiners in New York, whose duties also included assisting in the examination of importations of cargo ginger in brine. He stated that shipments of cargo ginger in brine from China generally appear about the same. He identified a sample of ginger in brine from Formosa, entered by the plaintiffs on December 30, 1953, which was received in evidence as defendant's illustrative exhibit B. The witness testified that he had seen ginger growing in China during the years about 1927 and 1928 and that, after it is harvested by the farmers, it is sold to a ginger store where the skin is scraped off with a bamboo knife and the ginger root is dried in the sun to some extent and then shipped to Hong Kong. In the course of scraping off the skin, irregularities and also any undesirable part is also scraped off. In the Hong Kong factory, the ginger is washed, some of the bitter juice is removed, the root is pinched, and a bamboo fork used to make a hole in order that the brine might penetrate the root. It is again washed and placed in a barrel in brine. This witness interpreted the letters "FAQ" on the invoice as indicating first A

quality. In comparing the taste of fresh ginger and Chinese cargo ginger in brine, in the condition as imported, the witness stated that the fresh ginger is much hotter to the taste than the cargo ginger in brine. In describing the use of cargo ginger in brine, the witness stated that it is eaten at mealtimes by Chinese residents of this country after it has been boiled to remove the salt and again washed and then sliced in thin slices and cooked with meat, "sometimes with duck meat, sometimes with chicken meat" in the form of chop suey. Sometimes vegetables are used. He has cooked and eaten it himself and produced a sample which he had prepared as follows:

I first boiled it for a few minutes, and then I took it out, and then washed it with cold water, and then I sliced them into thin slices, and then I also sliced some beef, and cooked it together with a little soy and a little vegetable oil, maybe a little cornstarch, to form a little, slight gravy.

The sample was admitted in evidence as defendant's illustrative exhibit A.

The witness admitted on cross-examination that he had not been in China since 1933 but that he had observed the process, which he had described, during his visit in 1927 or 1928; that such process was the one used at that time; and that he had no personal knowledge as to whether that process was still being used. He testified that, when he prepared ginger from defendant's illustrative exhibit B, he first had to remove the brine, which he discarded, and then he cooked the ginger, after which it was mixed with other foods or products.

It is noted that the rates of duty applicable to ginger root were reduced by the General Agreement on Tariffs and Trade (T. D. 51802). The phraseology (with unimportant exceptions) has not been changed. The Summary of Tariff Information, 1948, contains some interesting information in relation to ginger root. Although this was published subsequent to the General Agreement on Tariffs and Trade, *supra*, and we have no information as to whether it was before the negotiators, we quote excerpts therefrom as follows (vol. 7, pt. 6, p. 167):

Ginger root is the rootstock of the ginger plant, a perennial which grows freely in moist tropical areas. Ginger root is used principally as a spice; for making ginger ale and other beverages, pickles and curries, and chutneys and preserves; as a medicinal; and as a confection. This summary covers crude, dried, unground ginger root and ginger root that is candied or otherwise prepared or preserved for use as a confection.[1] It does not cover ground ginger root for use as a spice (see separate summary, par. 781).

---

[1] In the Tariff Act of 1930, unground ginger root "not preserved or candied" is provided for on the free list under par. 1768; and ginger root "candied, or otherwise prepared or preserved," is dutiable at 20 percent ad valorem under par. 778.. In July 1936 the Treasury Department ruled (T. D. 48457) that ginger root "changed from the natural state by drying sufficiently to result in permanent preservation" was properly classifiable under par. 778. As a result, imports reported under that paragraph, which had previously consisted of candied and preserved ginger only, were largely made up of the crude, dried ginger, which had previously been reported under paragraph 1768. In 1941 this ruling was revoked (T. D. 50380) and imports of dried ginger root were again reported under par. 1768.

*Dried ginger.*—Ginger is not grown in continental United States. It is imported as a crude root and, as such, is not competitive with any domestic product. Most of the imports are ground in this country for use as a spice.

The principal sources of imports of crude ginger root are Jamaica, British West Africa, China, and Hong Kong. United States imports of crude ginger in prewar years averaged somewhat less than 4 million pounds annually. In 1942, however, when large quantities were sent to the United States in anticipation of the shipping shortage, they reached a record high of 7.3 million pounds. Imports declined somewhat thereafter, but in 1945 they amounted to more than 6 million pounds. In 1946 and 1947 imports were 3.6 million pounds and 2.4 million pounds, respectively (see table 3).

*Candied ginger.*—Candied or preserved ginger is essentially an oriental product. Canton, China, is the largest center of production; Japan and India follow in importance. Smaller quantities are also produced in the West Indies, Central America, and British West Africa.

The ginger root dutiable under paragraph 778 usually consists of two types: (1) Candied or crystallized; and (2) preserved, or Canton, ginger. Both types are used as confections. Candied ginger root is prepared from selected material of the ginger root. Boiled in a succession of sugar solutions, it is then allowed to dry and crystallize, and is then put up in small tins for the retail trade. Preserved (or conserved) ginger root consists of the young and more tender roots, which are cured and preserved in sirup and then marketed in earthenware pots or jars.

In the United States ginger root is candied or preserved by manufacturers of candied fruits and fruit peels, and by confectioners. The chief centers of manufacture are in New York, Ohio, Illinois, Massachusetts, Pennsylvania, and California. As there is no domestic production of the raw material, candied ginger root is manufactured from imported dried ginger. Candied ginger root imported from China competes with similar preparations candied or crystallized in the United States. The Chinese product is considered inferior in quality and sells at a lower price.

The rule has been established that the mere preservation of a commodity to facilitate or make possible the transportation and handling thereof, and for no other purpose, is not a preserving. This was held in the early case of *Causse* v. *United States*, 150 F. 419. There is no dispute that the purpose of placing the ginger root, here involved, in brine was for temporary preservation and that it will remain in a usable condition for a period of about 3 months. Therefore, we hold that the ginger root is not preserved. Obviously, in its imported condition it is not candied. The question, therefore, resolves itself into a determination of whether the heading of paragraph 1768, *supra*, "Spices and spice seeds," indicates an intention on the part of Congress to exclude from that paragraph ginger root which is not chiefly used as a spice. The record discloses that the commodity before us is used in the preparation of crystallized ginger and candied ginger, and is also used in combination with duck meat or chicken, and sometimes vegetables, to form a dish which is eaten by Chinese residents of this country at mealtimes.

While the heading of a paragraph will not operate to draw within it articles which Congress indicated should be classified elsewhere,

it is given weight in determining the character of the article claimed to be dutiable under it. *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254. This case was cited with approval in *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809, where the commodity consisted of wild mustard seed which had been classified by the collector under paragraph 779 of the Tariff Act of 1922. The court held it was not entitled to classification thereunder in that it had not been shown to be used as a spice, but was of a class used only for animal feed. In arriving at its conclusion, the court used the following language:

> We do not believe that paragraph 779 was intended to cover the class of merchandise herein under consideration. It will be noted that paragraph 779 bears the heading "Spices and spice seeds," and that the catchall provision of the paragraph is as follows:
>
> \* \* \* \* \* \* \*
>
> If wild mustard seeds, like the importation at hand, were used as a condiment, Congress might have included them within paragraph 779. \* \* \* Since wild mustard seeds are not used as a spice, no provision was made for "wild mustard" in the paragraph, and we do not think the provision for "mustard seeds (whole)" includes the merchandise.

The record herein shows that the instant merchandise is used for making confectionery and also as part of a meat dish eaten as a meal by the Chinese in this country. It has not been shown to be used as a spice.

In the case of *Central Commercial Co.* v. *United States*, 62 Treas. Dec. 363, T. D. 45947, the court had before it an importation of unground ginger root in a solution of plum juice and salt assessed as "ginger root, candied, or otherwise prepared or preserved." Plaintiff there claimed free entry under paragraph 1768, *supra*, as "ginger root, not preserved or candied." The court, in sustaining the collector's action, reviewed the legislative history of the ginger root paragraphs as follows:

> The cases cited in the appraiser's report arose under the act of 1913, and the court held that the ginger, which was unground and in brine and vinegar, was dutiable under the provision in paragraph 235 of that act for "ginger root, unground and not preserved or candied." This classification was in harmony with the earlier decision in G. A. 6511, T. D. 27799, which arose under the act of 1897. In the last-mentioned case the competing provisions were that contained in paragraph 241 of the act of 1897 for—
>
> > all vegetables, prepared or preserved, including pickles and sauces of all kinds, not specially provided for,
>
> and that in paragraph 667 of the free list for "ginger root, unground and not preserved or candied." The court in the course of its decision said:
>
> > It may probably be noted as a fact of common knowledge that preserved ginger root is "the conserve known as 'preserved ginger' \* \* \* prepared from immature roots, so that they are soft and succulent and can readily absorb the sirup in which they are served." (see "Ginger," Standard Dictionary; G. A. 3608, T. D. 17434).

Later, however, the court departed from its earlier rulings and in Abstract 45440, *supra*, held the commodity to be dutiable under a specific provision for "pickles." This decision was affirmed in the case of *Asia Co.* v. *United States*, 11 Ct. Cust. Appls. 514, T. D. 39662.

Knowledge of these decisions must be imputed to Congress, and in the light of this knowledge the legislative body enacted paragraph 776 of the Tariff Act of 1922 which broadened the scope of the provision in the dutiable list for ginger root so as to include prepared ginger. This provision was reenacted in paragraph 778 of the act of 1930. The specific provision for pickles was eliminated from both the 1922 and 1930 acts. The holding of the court in said Abstract 45440 is therefore inapplicable to merchandise imported under the 1930 act. Diligent search has failed to disclose any case in which this question was decided on the merits under the act of 1922.

The provision for prepared ginger root is to our mind strongly indicative of a legislative purpose to provide for the commodity now before us under that descriptive term.

Plaintiff's attorney contends that in view of the omission of a specific provision for pickles in the 1930 act the court should follow the earlier line of decisions holding this merchandise to be unground ginger root "not preserved or candied." To do this would be to disregard the provision for "prepared" ginger root.

* * * * * * *

Bearing in mind that the earlier line of decisions indicated that the term "preserved ginger" was limited to the conserve known by that name, we are bound to conclude that this commodity, which is not a conserve and is not candied, but which has undergone a pickling preparation, is ginger root "otherwise prepared."

There being a specific provision for ginger root "otherwise prepared" than by candying, the commodity in the instant case can not be relegated to the general provision in the free list (paragraph 1768) for "ginger root, not preserved or candied," unground.

It is true that the court there was not called upon to specifically decide the question whether the wording of paragraph 1768, *supra*, providing for "Spices and spice seeds," excluded the ginger root here involved from its operation. However, its holding is indicative of such a finding.

In view of the legislative history of the paragraph, it is the view of the court that Congress, in enacting an *eo nomine* provision for "Ginger root, candied, or otherwise prepared or preserved," intended thereby to provide for such ginger root as was not used as a spice but was intended for other uses because of its preparation or preservation. The instant commodity is shown to be used both as a basis for crystallized ginger and as a food product eaten at a meal together with meat or poultry. The record shows that it has been peeled and dried to some extent, some of the juice having been expressed and the root perforated in order to allow the brine to penetrate the root. The word "prepared," in a tariff sense, means, ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use. *United States* v. *Conkey & Co.,*

12 Ct. Cust. Appls. 552, T. D. 40783. The ginger root here involved falls within this meaning.

Upon the record we hold that plaintiffs have failed to sustain their burden of proof. Judgment will, therefore, be rendered for the defendant.