(C.D. 4707)

CRABTREE VICKERS, INC. *v.* UNITED STATES

Court No. 75-1-00278

(Decided July 15, 1977)

*Murray Sklaroff* for the plaintiff.
*Barbara Allen Babcock*. Assistant Attorney General (*Susan Handler-Menahem*, trial attorney), for the defendant.

LANDIS, Judge: This action is brought to contest the classification of merchandise imported from England consisting of aluminum plates coated with a photosensitive plastic. Customs officials classified the plates as parts of printing machinery dutiable at 6 per centum ad valorem under item 668.50 of the Tariff Schedules of the United States (TSUS).[1]

Plaintiff claims that the plates are properly dutiable at only 5 per centum ad valorem under TSUS item 668.38, which provides as follows:

| | | |
|---|---|---|
| 668. 38 | Steel plates, stereotype plates, electrotype plates, half-tone plates, photogravure plates, photo-engraved plates, and plates of other materials, engraved or otherwise prepared for printing _____ | 5%    ad    val. |

Both sides assert that, material to the decision in this case, there is no genuine issue of fact. Pursuant to rule 8.2 of this court, both sides have moved for summary judgment. Plaintiff's motion seeks judgment sustaining the claim under TSUS item 668.38. Defendant's

---

[1] Schedule 6.—METALS AND METAL PRODUCTS
Part 4.—Machinery and Mechanical Equipment

| | | |
|---|---|---|
| * | *  .  '  .  *    *    *    *    * | |
| | Printing machinery: | |
| * * * | Textile printing machinery _____ | * * * |
| 668. 20 | Other, including printing presses, offset duplicating machines, and stencil copy machines. _____ | 6%   ad   val. |
| ,   * | *    *    .    *    .    *    *    * | |
| 668. 50 | Other parts of printing machinery _____ | The rate for the articles of which they are parts |

motion requests judgment over-ruling plaintiff's claim and sustaining the customs classification under TSUS item 668.50.

Factually,[2] it is agreed that the plates are parts of printing machinery[3] albeit in an unfinished condition;[4] that, in the condition imported the plates cannot print anything; that before they can be used for printing the plates must be exposed to an image and the image developed; and that the imported plates are none of the plates descriptively classified in item 668.38. The only issue in this case is whether the plates fall within the item 668.38 classifying provision for plates "of other materials, engraved or otherwise prepared for printing." If the plates are engraved or otherwise prepared for printing, specifically provided for under item 668.38, then they are not properly classifiable as parts of printing machinery, because a tariff provision for parts of an article does not prevail over a specific tariff provision for such part.[5]

Plaintiff contends that, while not engraved, the plates have been otherwise prepared for printing by coating with a photosensitive plate.[6] Citing, *Christo Poulos & Co., Inc., et al.* v. *United States*, 35 Cust. Ct. 69, C.D. 1724 (1955), plaintiff argues that the phrase "otherwise prepared," as frequently interpreted, is broad enough to cover the plastic coating process which, in this case, advanced the plates toward their ultimate use in printing.

Defendant, on the other hand, argues that, in the tariff sense, plates engraved or otherwise prepared for printing means plates which, if not engraved for printing, are, in the condition imported, comparable to a plate engraved for printing, that is, capable without further processing of producing an image by printing.

---

[2] The plates in this case are described on the invoices as "Visiplates" and "Alympic Gold Plates." As pleaded by plaintiff (Complaint, paragraphs 6 and 7), defendant admits that:

6. As imported, each style of plate, regardless of description, is comprised of a base of aluminum which has been given an electrochemical grain, then anodized, then coated with a light sensitive photopolymer. The plates can only be used in conjunction with printing machinery, but must first be exposed to light and the image which it is desired to reproduce in print. After such exposure the plates are developed and can then be used for printing. The exposure and developing are carried out after importation.

7. The "Visiplates" yield a "negative" image after exposure and developing, that is, the portions of photopolymer reached by light are hardened. On developing, the softer areas, where light has been masked by the image, are washed away. The "Alympic Gold Plates" yield a "positive" image, after exposure and developing. The portions of photopolymer reached by light are softened, and are washed away in the developing.

[3] "10. General Interpretative Rules. For the purposes of these schedules—

\*      \*      \*      \*      \*      \*      \*

(ij) a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." [TSUS, General Headnotes and Rules of Interpretation.]

[4] "10. General Interpretative Rules. \* \* \*

\*      \*      \*      \*      \*      \*      \*

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished." [TSUS, General Headnotes and Rules of Interpretation.]

[5] N. 3.

[6] Exhibits attached to the affidavit of Denis B. White, president of Howson-Algraphy, Inc., are stated to be representative and identical to the invoiced visiplates (exhibit 1) and alympic gold plates (exhibit 3), except as to length and width. Exhibits 1 and 3, after the exposure and developing described in n. 2, *supra*, are finished plates in the condition of exhibits 2 and 4, ready for use in printing.

"I conclude that the words "engraved * * * for printing" connote a plate that requires no further processing for use in printing, and that the term "otherwise prepared" for printing logically also connotes a plate which, if not engraved, is in a prepared condition requiring no further processing for use in printing.

Plates, engraved for printing, have been specially provided for in tariff acts as far back as 1883. Under the 1913 Tariff Act, paragraph 137, provided for plates engraved for printing as follows:

> 137. Steel plates engraved, stereotype plates, electrotype plates, halftone plates, photogravure plates, photo-engraved plates, and plates of other materials, engraved for printing, plates of iron or steel engraved or fashioned for use in the production of designs, patterns, or impressions on glass in the process of manufacturing plate or other glass, 15 per centum ad valorem; lithographic plates of stone or other material engraved, drawn, or prepared * * * 25 per centum ad valorem.

The significant point of the above provision is that, in the qualified sense of plates for printing, the only plates Congress provided for were engraved plates. An engraved plate is a plate that has had pictures, lettering, etc. cut into the plate for the purpose of printing. No further processing is necessary to print from plates made by such a process.[7] The 1913 Tariff Act did not provide for plates "otherwise prepared for printing." In the 1922 Tariff Act, paragraph 341,[8] Congress amended the provision for plates for printing to include such as were "engraved or otherwise prepared for printing." The amendment was apparently prompted by what was reported to the Senate Committee on Finance in the *Summary of Tariff Information*, 1921, as follows, at page 448:

> "Suggested Changes.—The plates named in this paragraph are not strictly engraved plates. The words 'or otherwise prepared' might be inserted * * * after 'engraved.' "

TSUS item 668.38 provides for plates engraved or otherwise prepared for printing in the exact terms of paragraph 341 of the 1922 and 1930 Tariff Acts. The master rule in the consideration of statutes is to ascertain and carry out the legislative intent using, if necessary, established rules of construction. *Sears, Roebuck & Co.* v. *United States*, 26 CCPA 161, 167, C.A.D. 11 (1938). It is clear, under the 1913 Tariff Act, that Congress limited the classification of plates for printing to those engraved for printing and that engraved plates for printing require no further processing for printing. It is not at all clear what Congress intended when it inserted the words "otherwise

---

[7] *Funk & Wagnalls Standard Dictionary, International Edition* (1963) defines the term "engrave" as follows:

*engrave* v.t. *.graved, .graving* 1 To carve or etch figures, letters, etc., into (a surface). 2 To impress deeply. 3 To cut (pictures, lettering, etc.) into metal, stone, or wood, for printing. 4 To print from plates made by such a process. * * *

[8] Paragraph 341 of the 1930 Tariff Act is the same as paragraph 341 of the 1922 Tariff Act.

prepared" after the word "engraved" in the 1922 and subsequent tariff acts. The whole point of plaintiff's argument is that in the condition imported the plates are "otherwise prepared," because they have been advanced toward their ultimate use in printing by coating with a photosensitive plastic. *Christo Poulos*, relied on by plaintiff, does support the rule that the word "prepared," in a tariff sense, ordinarily means that a commodity has been processed in a manner that advances and makes it more valuable for its intended use. The merchandise in *Christo Poulos*, however, was ginger root in brine classified under a provision (paragraph 778) of the 1930 Tariff Act for "Ginger root, candied, or otherwise prepared or preserved." That provision unqualifiedly covered ginger root, candied or otherwise prepared or preserved. Item 668.38 does not unqualifiedly cover all plates "engraved or otherwise prepared." It only covers such plates as have been "engraved or otherwise prepared for printing." The distinction is a material one, and plaintiff's resort to the rule of construction subscribed to in *Christo Poulos* does not persuade me that it is the best of all rules to apply in seeking to ascertain what Congress intended when it classified plates "engraved or otherwise prepared for printing."

The tariff history of the terms used suggests application of more definitive rules.

Plaintiff allows that there is a paucity of case law involving the tariff provision for plates engraved or otherwise prepared for printing. That may be so, but independent research turns up at least two cases which hold that plates, engraved or otherwise prepared for printing, include only such as in the condition imported are ready for printing, that is, require no further processing. *The Jersey City Printing Co. et al.* v. *United States*, 63 Treas. Dec. 397, T.D. 46219 (1933); *J. E. Bernard & Co., Inc.* v. *United States*, 6 Cust. Ct. 46, C.D. 422 (1941). The plates in *Jersey City* consisted of a steel sheet with a flash or very thin finish of copper on top of it and on top of the copper a layer of chromium not more than one ten-thousandths of an inch in thickness. After importation a developing silver solution was applied to the chromium surface; the whole surface was then subjected to a photographic process, after which an applied etch ate out all space not affected by light, leaving a printing surface slightly raised. This court, commenting that the entire process was still in an experimental state, held that "the merchandise in its imported condition did not consist of 'steel plates * * * engraved or otherwise prepared for printing' within the meaning of paragraph 341 of the act of 1922." In *J. E. Bernard & Co., Inc.* (an opinion decision written by Judge Dallinger, who had written the opinion decision in the *Jersey City* case), merchandise invoiced as "45 litho zinc plates with original work for reproduction of maps" was held properly dutiable as claimed under paragraph 341 of the 1930 Tariff Act under the provision "steel

plates * * * and plates of other materials, engraved or otherwise prepared for printing," or alternatively under the same paragraph as "lithographic plates of stone or other material engraved, drawn, or prepared." Replying to the defendant's citation of the *Jersey City* case in support of the contention that the plates were not prepared for printing within the meaning of the relevant tariff provision, this court stated:

> * * * We have carefully read the decision in that case [*Jersey City*] and regard it as having no application to the facts in this case. There, the merchandise consisted of certain chromium, steel, and copper plates to which certain processes had been applied after importation to render them prepared for printing. Here, no additional processes are required to be applied to the imported plates to make them ready for use in offset printing. [6 Cust. Ct. at 49.]

*Jersey City* and *J. E. Bernard* taken together clearly spell out this court's interpretation of the term "engraved or otherwise prepared for printing" in the 1922 and 1930 Tariff Acts. Congress first used the term in the 1922 Act, carried it over into the 1930 Act and again carried it over into TSUS item 668.38. When a given tariff term has been judicially interpreted and is thereafter reenacted in substantially the same language, the rule is that the term, when used in a later statute, will be given the same interpretation unless a legislative intent to the contrary clearly appears. *W. E. Sellers* v. *The Cronite Co., Inc.*, 45 CCPA 27, C.A.D. 668 (1957). Absent any showing of a legislative intent to the contrary, I am brought to apply the doctrine of legislative ratification of judicial construction to item 668.38 in this case. *August Bentkamp* v. *United States*, 40 CCPA 70, C.A.D. 500 (1952).[9] The case of *Volkswagen of America, Inc.* v. *United States*, 68 Cust. Ct. 122, C.D. 4348, 340 F. Supp. 983 (1972); *aff'd, United States* v. *Volkswagen of America, Inc.*, 61 CCPA 41, C.A.D. 1115, 494 F. 2d 703 (1974), cited and referred to by plaintiff in its brief, is not applicable as that case was one in which the court discussed the inadvisability of determining legislative intent in a prior act by the use of supplemental reports not involved in the enacting of legislation and considerably later in point of time. In ascertaining legislative intent, it is also a rule of statutory construction that a general term, such as "otherwise prepared," following a specific enumeration, such as here, "engraved," is to be construed as *ejusdem generis* with the specific enumeration. The words "for printing" following the general term add an even more positive dimension to the rule. As the court of appeals has said:

[9] See, *Summaries of Trade and Tariff Information*, Schedule 6, Volume 8 (1969), prepared in terms of TSUS, where in discussion of the commodity "printing plates," item 668.38, it is stated, at page 267, that:

* * * Unfinished plates or plates that have been finished but have not been engraved or otherwise prepared for printing are not covered by this summary [on printing plates] * * *.

The rule of *ejusdem generis* (where particular words of description are followed by general terms, the latter refer only to things of a like class with those particularly described) is a well known rule of construction, often used by this court, to aid in arriving at the legislative intent of Congress, which, of course, is the ultimate consideration in the construction of tariff statutes. The rule is primarily designed to preserve the meaning of the particular words as well as to give to the general words an interpretation consistent with the manifest purpose of the entire act. *Overton & Co.* v. *United States*, 2 Ct. Cust. Appls. 422, T.D. 32172. The latter purpose subserves an even more fundamental purpose of giving effect, if possible, to *all* words in a statutory provision, since the legislature is not presumed to have used superfluous words. [Citing authorities.] [*United States* v. *C. J. Tower & Sons*, 44 CCPA 1, C.A.D. 626, at 5.]

Concededly, the plates in the condition imported in this case cannot be used for printing and require further processing. The imported plates are not, therefore, in the condition of the plates Congress intended to provide for under the item 668.38 provision, "plates * * * engraved or otherwise prepared for printing."

Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. The action is accordingly dismissed.

Judgment will so enter.